IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BACILIO A. AMORRORTU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-3418 |
| | § | |
| REPUBLIC OF PERU, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This 2011 suit arises out of a 2006 suit filed by the same plaintiff, Bacilio A. Amorrortu, against the same defendant, the Republic of Peru, in federal district court. In the prior lawsuit, Amorrortu alleged that the Republic of Peru refused to pay a debt owed by a Peruvian oil company to an oil company Amorrortu owned; confiscated and destroyed his company's assets; and persecuted him for political reasons. Amorrortu sought $37 million in damages. The Republic of Peru retained Locke Lord Bissell & Liddell LLP ("Locke Lord") to defend against Amorrortu's claims. Locke Lord moved to dismiss based on the lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). The federal district court granted the motion and dismissed the case. *Amorrortu v. Republic of Peru*, 570 F. Supp. 2d 916, 925 (S.D. Tex. 2008). The Fifth Circuit affirmed. *Amorrortu v. Republic of Peru*, 325 F. App'x 400, 400 (5th Cir. 2009).

In September 2011, Amorrortu sued the Republic of Peru again, asserting causes of action for "Gross Negligence," "Breach of Conflict of Interest," "Misconduct and Unfairness," "Loss of Opportunities," and "Pain and Suffering." Amorrortu's claims are based on Locke Lord's representation of the Republic of Peru in Amorrortu's 2006 suit. Amorrortu contends that he had prior "legal relations" with Locke Lord that created a conflict of interest preventing that law firm

from representing the Republic of Peru. Amorrortu alleges that the attorney who handled his political asylum application in 2000, Nicole Lawrence Ezer, was working for Locke Lord in 2006. Amorrortu further alleges that in 2006, he received legal advice from Ezer on his claims against the Republic of Peru. According to Amorrortu, Locke Lord "received sensitive information from [him] related to his claims against the Peruvian State" before their legal relationship "was discontinued" and before he sued the Republic of Peru in December 2006. He contends that the Republic of Peru was negligent and "breached Texas law" and "the conflict of interest laws and rules" by retaining Locke Lord without investigating whether Locke Lord or any of its attorneys had previously given him legal advice. Amorrortu seeks $14.2 million in damages.

The Republic of Peru—now represented by Dorsey & Whitney and Gardere Wynne Sewell—has moved to dismiss Amorrortu's claims and filed a memorandum in support of its motion. (Docket Entries No. 6 & 8.) The motion asserts that this court lacks subject-matter jurisdiction under the FSIA. In the alternative, the Republic of Peru argues that if the court finds that it has subject-matter jurisdiction, the case should be dismissed for two additional reasons. The first is that the two-year statute of limitations bars Amorrortu's claims. The second reason is that Texas law does not impose liability on a client for the alleged wrongdoing of its attorney and Amorrortu did not move to disqualify Locke Lord in the previous litigation. Amorrortu has responded to the motion to dismiss, and the Republic of Peru has replied. (Docket Entries No. 14 & 15.)

Amorrortu has also moved to disqualify Dorsey & Whitney as the Republic of Peru's counsel in this case. (Docket Entry No. 11.) Amorrortu argues that Dorsey & Whitney was cocounsel with Locke Lord for the Republic of Peru in the 2006 case and therefore knows "all the highly sensitive and classified information delivered by Amorrortu to [Locke Lord]." (*Id.* at 5.) Amorrortu argues

2

that Dorsey & Whitney "want[s] to be involved as Peru's defendant in this current lawsuit . . . to suppress Amorrortu, repress the truth, and manipulate the information of the case." (*Id.*) The Republic of Peru responds that there is no conflict of interest or other reason preventing Dorsey & Whitney from defending the Republic of Peru in the current action. The Republic of Peru asserts that Dorsey & Whitney did not receive any "factual background information" about Amorrortu from Locke Lord and did not know, before Amorrortu filed this action, that Ezer or Locke Lord had ever provided legal advice to Amorrortu. (Docket Entry No. 12, at 6.)

The court heard oral argument on the pending motions. Based on the pleadings; the motions, responses, and replies; the arguments of counsel; and the relevant law, this court grants the motion to dismiss for lack of subject-matter jurisdiction and denies the motion to disqualify. Final judgment is entered by separate order. The reasons for these rulings are explained below.

## I.     The Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir. 1996)). "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The plaintiff bears the burden of demonstrating that subject-matter jurisdiction exists. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

**II.     Analysis**

   **A.     Subject-Matter Jurisdiction**

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in federal court." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989). "Under the FSIA, 'a foreign state is presumptively immune from jurisdiction of the United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state.'" *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 215 (5th Cir. 2009) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)). "[A]lthough a party claiming FSIA immunity retains the ultimate burden of persuasion on immunity, it need only present a prima facie case that it is a foreign state; . . . if it does, the burden shifts to the party opposing immunity to present evidence that one of the exceptions to immunity applies." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 847 (5th Cir. 2000).

Because the Republic of Peru is a "foreign state" under the FSIA, this court lacks subject-matter jurisdiction unless one of the exceptions to foreign sovereign immunity applies. Amorrortu argues that this court has subject-matter jurisdiction under the FSIA's waiver and commercial-activity exceptions.

Under the waiver exception, "[a] foreign state shall not be immune form the jurisdiction of courts of the United States . . . in any case . . . in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. § 1605(a)(1). "The waiver exception is to be narrowly construed." *Pere v. Nuovo Pignone, Inc.*, 150 F.3d 477, 482 (5th Cir. 1998). An explicit waiver under § 1605(a)(1) "must give a clear, complete, unambiguous, and unmistakable manifestation of the sovereign's intent to waive its immunity."

4

*Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1292 (11th Cir. 1999) (internal quotation marks omitted). An implicit waiver is even more limited. An implicit waiver "may be found in three situations: 1) when a foreign state agrees to arbitration in another country; 2) when a foreign state agrees that the laws of another country govern a contract; and 3) when a foreign state files a responsive pleading without raising the immunity defense." *Pere*, 150 F.3d at 482.

There is no basis to conclude that the Republic of Peru waived its sovereign immunity in this case, explicitly or implicitly. Amorrortu argues that "the Republic of Peru has waived its immunity because . . . knowing that Amorrortu was granted political asylum by the United States," it hired Locke Lord in 2007[1] without investigating whether any of its lawyers had previously represented Amorrortu in his immigration proceedings. (Docket Entry No. 15, at 15.) Contrary to Amorrortu's argument, the Republic of Peru did not waive sovereign immunity by hiring Locke Lord in 2007. Hiring counsel is not a clear and unambiguous manifestation of the Republic of Peru's intent to waive sovereign immunity. In the present case, as in the 2006 case, the Republic of Peru "has explicitly objected to the Court's jurisdiction in every filing it has made to date." *Amorrortu*, 570 F. Supp. 2d at 921. The FSIA's waiver exception does not apply.

Under the commercial-activity exception, "[a] foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(2). "Commercial activity" is defined as "either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by

---

[1] Amorrortu first sued the Republic of Peru in December 2006. The record reveals that Locke Lord first appeared as Peru's counsel in September 2007.

5

reference to its purpose." *Id.* § 1603(d). "A 'commercial activity carried on in the United States by a foreign state' means commercial activity carried on by such state and having substantial contact with the United States." *Id.* § 1603(e).

To determine whether the commercial-activity exception applies, the Fifth Circuit uses a three-step approach. First, "the relevant activity must be identified." *Can-Am Int'l, LLC v. Republic of Trinidad and Tobago*, 169 F. App'x 396, 404 (5th Cir. 2006). "This requires focusing on the acts of the named defendant, not on other acts that may have had a causal connection with the suit. In particular, [the court] must isolate those specific acts of the named defendant that form the basis of the plaintiff's suit." *de Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1391 (5th Cir. 1985) (internal citation omitted). "The focus of the exception to immunity recognized in § 1605(a)(2) is not on whether the defendant generally engages in a commercial enterprise or activity, . . . [but] on whether the particular conduct giving rise to the claim in question constitutes or is in connection with commercial activity, regardless of the defendant's generally commercial or governmental character." *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1379 (5th Cir. 1980). "Second, [the court] must determine whether the relevant activity is sovereign or commercial—a label which depends on the nature of the activity rather than on its purpose." *de Sanchez*, 770 F.2d at 1391. "A foreign government's acts may be deemed commercial when that foreign government is not acting 'as a regulator of the market, but in the manner of a private player within it.'" *Can-Am Int'l*, 169 F. App'x at 404 (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992)). "[T]he question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives," but "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Weltover*, 504 U.S.

at 614 (citation omitted). And third, "if the relevant activity is commercial in nature, the court must determine whether it had the requisite jurisdictional nexus with the United States." *Can-Am Int'l*, 169 F. App'x at 404. "Section 1605(a)(2) identifies three such connections: (1) commercial activity carried on in the United States; (2) acts performed in the United States in connection with commercial activity elsewhere; and (3) direct effects in the United States of commercial activity elsewhere." *de Sanchez*, 770 F.2d at 1391.

Amorrortu argues that the FSIA's commercial-activity exception applies because the Republic of Peru "hired and paid monies" to Locke Lord in the United States in the prior suit and because his claims in the present case are based on Locke Lord's earlier representation of the Republic of Peru. (Docket Entry No. 15, at 16.) Amorrortu sued the Republic of Peru in 2006. The Republic of Peru retained Locke Lord to defend it in that suit. Through Locke Lord, the Republic of Peru asserted the defense of sovereign immunity. The 2006 case was dismissed for lack of subject-matter jurisdiction under the FSIA. Amorrortu cannot now sue the Republic of Peru by asserting that the Republic of Peru waived its sovereign immunity by retaining the law firm that successfully asserted sovereign immunity. Holding that the decision to retain legal counsel to assert the defense of sovereign immunity may itself defeat sovereign immunity in a future action would wholly undermine the FSIA. The fact that a foreign sovereign sued in the United States courts by a United States resident retains a United States law firm to defend it does not waive that sovereign's immunity under the FSIA. To hold otherwise would create an exception that would swallow the immunity rule. The fact that the Republic of Peru hired Locke Lord in 2007 to defend against the suit Amorrortu filed in 2006 cannot form the basis for applying the commercial-activity exception in this subsequent case Amorrortu filed against the Republic. The FSIA's commercial-liability exception does not apply under the circumstances of this case.

Because Amorrortu has not met his burden of showing that an exception to sovereign immunity applies, this court lacks subject-matter jurisdiction over this action. The motion to dismiss for lack of subject-matter jurisdiction is granted. Amorrortu's motion to disqualify Dorsey & Whitney is denied.

### B. Other Grounds for Dismissal

Even if an exception to sovereign immunity applied, the court would still dismiss this action because the statute of limitations bars Amorrortu's claims and because the complaint fails to state viable causes of action.

Amorortu's five causes of action sound in tort. They are all based on the allegation that the Republic of Peru was negligent in hiring Locke Lord by failing to investigate whether the lawyer who had represented Amorrortu in his immigration proceedings in 2000 worked for Locke Lord in 2006 or whether anyone at Locke Lord had previously provided legal advice to Amorrortu.

Under Texas law, tort claims are governed by a two-year statute of limitations running from the date the cause of action accrues. *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011). "Generally, a cause of action accrues when a wrongful act causes a legal injury." *Id.* The record reveals that the Republic of Peru hired Locke Lord in 2007. Locke Lord first appeared as Peru's counsel in September 2007. The district court entered final judgment in the 2006 suit in July 2008. Amorrortu did not sue the Republic of Peru to recover the damages he asserts arose from the Republic's 2007 retention of Locke Lord until September 2011. That is more than two years after Amorrortu knew that Locke Lord was representing the Republic of Peru. The statute of limitations bars Amorrortu's present suit.

Amorrortu's causes of action also fail as a matter of law. The allegation underlying all of Amorrortu's claims is that the Republic of Peru negligently hired Locke Lord without adequately

investigating whether Ezer worked for Locke Lord in 2006 or whether any Locke Lord attorney had previously provided legal advice to Amorrortu. The Republic of Peru correctly argues that Texas law does not impose a duty on a client to investigate whether its attorney has a conflict of interest that may prevent the attorney from undertaking to represent the client. Texas courts have held that "[u]nless a client is implicated in some way other than merely being represented by the attorney alleged to have committed the intentional wrongful conduct, the client cannot be liable for the attorney's conduct." *Bradt v. West*, 892 S.W.2d 56, 77 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Because the complaint only alleges that the Republic of Peru hired Locke Lord and had nothing to do with, or had any knowledge about, Locke Lord's alleged conflict of interest, Amorrortu's damages claims against the Republic fail as a matter of law.

## III.     Conclusion

The defendant's motion to dismiss, (Docket Entry No. 6), is granted. The claims against the Republic of Peru are dismissed, without prejudice, for lack of subject-matter jurisdiction. Other pending motions are denied as moot. Final judgment is entered by separate order.

SIGNED on June 5, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge